UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SHAWN DUMAS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-221 |
| | § | |
| OFFICER STROUD, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shawn Dumas brings this civil rights suit alleging that Defendants violated his constitutional rights when they used force against him and denied him adequate medical care at the Galveston County Jail (the "Jail"). He sues Galveston Police Officer Bradley Stroud and Galveston County Sheriff Henry Trochesset. Both Defendants have filed motions for summary judgment (Dkt. 28, Dkt. 29) seeking dismissal of Plaintiff's claims. Plaintiff has not responded, and the time to respond has expired. The motions are ripe for decision. After reviewing the pleadings, the briefing and evidence submitted, the applicable law, and all matters of record, the Court concludes that Defendants' motions for summary judgment should be **granted** and that Plaintiff's claims should be **dismissed** with prejudice.

**I.    BACKGROUND**

Plaintiff sues Officer Stroud for an alleged use of excessive force at the Jail (Dkt

1, at 7).¹ He sues Sheriff Trochesset for alleged denial of adequate medical care at the Jail (*id*. at 8).²

On September 6, 2014, between approximately 3:00 and 4:00 a.m., Stroud arrested Dumas on drug charges and transported him to the Jail. Dumas alleges that, as they were walking into the building, Stroud used excessive force against him in the Jail's sally port. He states that Stroud grabbed his hands, which were cuffed behind his back, and "pushed [him] into a sliding glass door face first" (Dkt. 1, at 7). His complaint alleges that Stroud's actions caused "damage to [his] right eye" as well as "pain, suffering, physical injury, mental and emotional distress" (*id*.).

Stroud has submitted a declaration which states that, while in the sally port, Dumas refused to comply with his verbal instruction to walk into the Jail (Dkt. 28-14, at 3). Stroud avers that he "interpreted [Plaintiff's] response as his unwillingness to comply with [his] verbal commands" (*id*.). He also states that Plaintiff made a movement that Stroud "perceived . . . as an attempt to push into [Stroud] with [Plaintiff's] right shoulder" (*id*.). Stroud then used force against Dumas:

> I grasped the back of his shirt to physically control his movements and escorted him toward the jail door. At the first jail door, it appeared to me that Dumas attempted to pull away from me and push me away from him. It was necessary for me to have control of Dumas before we passed through the second door into the jail open booking area, so I pressed Dumas against

---

¹ Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

² Plaintiff's complaint also alleged that Trochesset "allow[ed] police brutality to go on" in the Jail (*id*. at 3). However, at deposition, Plaintiff confirmed that his claim regarding medical care is his only claim against the Sheriff or Galveston County (Dkt. 28-1, at 85).

a jail door to use it to assist me in regaining control of Dumas before escorting him inside the jail.

(*id*.). Stroud states that he "used no other force against Dumas" and that Dumas sat on a bench to await booking (*id*.).

Stroud maintains that he used the level of force he believed immediately necessary, only using physical force when his verbal commands were ineffective, and then only until Dumas stopped resisting (*id*. at 5). He states that his actions were consistent with his training through the Texas Commission on Law Enforcement ("TCOLE") (*id*.). He presents an affidavit from Sergeant Archie Chapman, Jr., of the Galveston Police Department, who has reviewed the incident and states that, based on his experience as a police officer and his own TCOLE training, Stroud's actions were consistent with TCOLE standards:

> [A]n officer could—in accordance with TCOLE training—press Dumas against a jail door to use it to assist in regaining control of Dumas . . . . Any reasonable officer could have used this minimal level of force to minimize the need greater force may be needed to gain control of Dumas inside the jail.

(Dkt. 28-15, at 4).[3]

At his deposition, Plaintiff agreed that Stroud used force against him only as they were entering the Jail (Dkt. 28-1, at 37). He testified that Stroud apparently did not like his "tone" when responding to Stroud's instructions for Dumas to come closer to him (Dkt. 28-1, at 37-38; *id*. at 39 ("I guess [Stroud] thought I was yelling or something")).

---

[3] Chapman also states, based on his investigation of the incident, the Jail "had no available recording of the interaction between Officer Stroud and Dumas" (*id*. at 2). Chapman reviewed the video from Stroud's patrol vehicle (*see* Dkt. 30), but the recording ended before the alleged use of force (Dkt. 28-15, at 2).

He states that Stroud "got [him] from behind" and placed one hand on the handcuffs and the other on Dumas' back (*id*.). Stroud then pushed Dumas and "kept on pushing . . . until [Dumas'] head pushed up in the glass door" (*id*. at 40). The right side of Dumas' face made contact with the glass, which caused a bruise but no bleeding (*id*. at 41). Immediately afterwards, "the door slid open," Dumas and Stroud entered the building, and Stroud "pushed [Dumas] down on the bench" (*id*. at 50). Dumas had no further physical interaction with Stroud, other than Stroud taking Dumas' cell phone and lighter out of his hands when taking Dumas' picture (*id*. at 58).

Although Plaintiff states in his complaint that he suffered eye pain and blurry vision as a result of Stroud's use of force, he clarified at deposition that he had a bruise on his cheek below his right eye, rather than an eye injury (*id*. at 47-48, 57). He testified that no other part of his face had been injured and that his face had made contact only with the glass, and not any other part of the door (*id*. at 49). Stroud states that he observed "no bump, bruise, abrasion, or any other evidence Dumas sustained any injury" and did not hear Dumas claim to have any injury (Dkt. 28-14, at 4). Stroud also states that he "had no reason to believe the minimal force [he] applied pressing Dumas against the door . . . would injure Dumas" (*id*.); *see* Dkt. 28-2 (booking photos). Plaintiff testified that the bruise below his right eye was not visible until three or four days later (Dkt. 28-1, at 48).

Dumas claims that he requested immediate medical attention for his eye but that Jail personnel merely told him to file a complaint (Dkt. 1, at 8). At deposition, he stated that he told a nurse from the Jail that he had been "assaulted" and had an injury to his

"right eye" but that the nurse "felt like [he] didn't need medical attention" (Dkt. 28-1, at 55-56). Defendants have submitted a medical intake form completed by Jail personnel at 4:00 a.m., around the time of booking. The intake form states that Dumas had no medical problems requiring immediate attention and that he had no other medical problems requiring care (Dkt. 28-10). Dumas signed the form.[4]

Two weeks later, on September 20, 2014, Jail medical personnel saw Dumas for a standard 14-day physical assessment. Defendants present an affidavit from Kathy White, the Health Services Administrator and a custodian of medical records at the Jail, stating that the 14-day assessment is completed on all inmates to identify health problems, discuss medical history, and perform an oral exam (Dkt. 29-1, at 2). White states that Dumas refused the assessment and attaches the Jail's refusal of treatment form, signed by Dumas on September 20, 2014 (Dkt. 29-1, at 2; *id*. at 10-12). At deposition, Plaintiff agreed that the signature on the form refusing treatment was his (Dkt. 28-1, at 81).

Four days later, on September 24, 2014, Dumas submitted a request for medical treatment for his right eye, complaining of eye pain and blurry vision (Dkt. 28-3). Medical personnel in the Jail clinic saw him the next day (Dkt. 29-1, at 14-15). The records reflect that Dumas would "contact family to bring reading glasses so vision not blurry" (Dkt. 29-1, at 14-15). Dumas received Tylenol for five days, from September 26

---

[4] In his complaint, Plaintiff identifies himself as an "MHMR [Mental Health and Mental Retardation] patient with special needs" (Dkt. 1, at 8). However, when booked into the Jail, Dumas completed a form regarding his need for services under the Americans with Disabilities Act and signed the portion indicating that he did not have a physical or mental impairment that would require services afforded to an individual with a disability (Dkt. 29-2, at 2, 5).

through 30 (*id.* at 14-15, 19). He alleges that the medications did not help his symptoms (Dkt. 1, at 8).

That same day, on September 24, 2014, Dumas also submitted an inmate grievance alleging that he informed the intake nurse and sergeant at the time of booking that he had been injured when Stroud "assaulted" him on September 6 by "slamming" his head "on a sliding glass door . . . . which injured my eye and cause[d] it to bruise" (Dkt. 28-8, at 1). Dumas claimed in the grievance that Jail personnel had only told him to "file a complaint" after he was released, that no incident report was filed, and that he received no medical treatment at intake (*id.*). Jail personnel responded to the grievance and listed the medical attention that Dumas had received at the Jail (Dkt. 28-6).

Dumas also submitted requests for medical treatment for his eye on October 5 and October 21, 2014.[5] Clinic personnel treated him on October 28, 2018 (Dkt. 29-1, at 17-18) and Dumas received ibuprofen from October 26 through November 2 (*id.* at 3-4, 20-22). He testified at deposition that he has not sought care for his vision since his release from custody (Dkt. 28-1, at 83).

Plaintiff seeks compensatory damages for damage to his eye and for mental and emotional distress (Dkt. 1, at 7).

---

[5] Dkt. 28-4 (claiming right eye pain causing loss of sleep on October 5, 2014); Dkt. 28-5 (claiming continuing right eye pain on October 21, 2014).

## II. STANDARDS OF REVIEW

### A. *Pro Se* Pleadings

In reviewing the pleadings and litigation history, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### B. Summary Judgment—Rule 56

Defendants have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant

to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

## III. ANALYSIS

Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a police officer, for a constitutional violation. See *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Plaintiff brings a claim against Defendant Stroud for use of excessive force during his pretrial detention. He brings a claim against Defendant Trochesset for denial of adequate medical care. Plaintiff does not specify whether he brings these claims against Defendants in their individual or official capacities.

### A. Qualified Immunity

Defendants have invoked qualified immunity. Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt*, 822 F.3d at 181 (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted).

A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Given the circumstances of this case, the Court proceeds to analyze the merits of his constitutional claims.

B.  **Excessive Force**

Stroud moves for summary judgment under Fourth Amendment standards, which apply to an officer's use of force during an arrest. Under the Fourth Amendment, courts analyze the objective "reasonableness" of a particular use of force, "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see Plumhoff v. Rickard*, 572 U.S. 765, 774-75 (2014). A plaintiff must demonstrate "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) (internal quotation marks and citation omitted). Although a plaintiff is no longer required to demonstrate a "significant injury," *de minimus* injuries such as bruises, abrasions, or contusions are insufficient under Fifth Circuit authority. *Id.* at 549-50. Proper application of the objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*,

490 U.S. at 396; *see Westfall*, 903 F.3d at 547. The officer's motive or intention is irrelevant to the inquiry. *Graham*, 490 U.S. at 397.[6]

In the case at bar, the record contains no genuine issue of material fact as to whether the force Stroud used against Dumas violated the Fourth Amendment. Plaintiff agreed at deposition that his only injury was a bruise to his cheek (Dkt. 28-1, at 47-49, 57), which is *de minimus* under the case law. *See Westfall*, 903 F.3d at 549-50. Moreover, Stroud has presented uncontroverted summary judgment evidence that his actions were objectively reasonable. His declaration demonstrates that he perceived resistance from Dumas because Dumas did not comply with Stroud's verbal commands in the sally port and appeared to "attempt to push into [Stroud]" with his shoulder (Dkt. 28-14, at 3). Stroud also states in his declaration that he stopped using force as soon as Dumas complied with his instructions (*id.*). Plaintiff agreed at deposition that Stroud might have perceived him as "yelling or something" (Dkt. 28-1, at 39) and that, after Stroud pushed him against the glass sliding door, Stroud "pushed" him down on a bench

---

[6] Plaintiff claims that Stroud used excessive force against him after his arrest but while he was still in Stroud's custody, as Stroud escorted him into the Jail. The Court applies Fourth Amendment standards, as recited above. However, to the extent the Fourteenth Amendment standard for pretrial detainees applies in this case, the result would be the same because the "objective reasonableness" test also would apply. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (factors for determining reasonableness are "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting"). The question of "when precisely arrest ends and pretrial detainment begins" is not clearly answered in the case law. *Surratt v. McClaran*, 234 F. Supp. 3d 815, 823 (E.D. Tex. 2016), *aff'd*, 851 F.3d 389 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 147 (2017); *see Jauch v. Choctaw Cty.*, 874 F.3d 425, 429 (5th Cir. 2017), *cert. denied*, 139 S. Ct. 638 (2018) (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017)); *Flores v. City of Palacios*, 381 F.3d 391, 398 (5th Cir. 2004); *Valencia v. Wiggins*, 981 F.2d 1440, 1443-44 (5th Cir. 1993).

in the booking area but did not use additional force against him (*id.* at 50, 58). Finally, the Court notes that Stroud's actions were consistent with his TCOLE training regarding the use of force "continuum" (Dkt. 28-14, at 6; Dkt. 28-15, at 5).

Viewing all facts in the light most favorable to Dumas, he has not demonstrated a genuine issue of material fact on his claim that Stroud's use of force was objectively unreasonable. *See Graham*, 490 U.S. at 396; *Westfall*, 903 F.3d at 547. In addition, for essentially the same reasons, Stroud is entitled to qualified immunity. *See Carroll*, 800 F.3d at 169.

### C. Medical Care

Plaintiff alleges that Jail personnel denied him adequate medical care while he was detained at the Jail. The Fourteenth Amendment "requires that state officials not disregard the basic human needs of pretrial detainees, including medical care." *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 462 (5th Cir. 2015) (internal citation and quotation marks omitted). Pretrial detainees may challenge either a "condition of confinement" or an "episodic act or omission." *Id.* (citing *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009); *Hare v City of Corinth, Miss.*, 74 F.3d 633, 644-45 (5th Cir. 1996) (en banc)). When bringing a claim regarding a condition of confinement, a plaintiff must show that the condition is not "reasonably related to a legitimate governmental objective." *Id.* at 463 (internal citation and quotation marks omitted); *see Bell v. Wolfish*, 441 U.S. 520 (1979). For a claim regarding an episodic act or omission, a plaintiff must demonstrate that a jail official had "subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate

indifference." *Henson*, 795 F.3d at 464 (internal citation and quotation marks omitted); *see Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). Plaintiff does not clearly identify which type of claim he brings. However, under either standard, he fails to demonstrate a genuine issue of material fact.

To the extent Plaintiff sues Trochesset in his official capacity as sheriff, he must demonstrate that "a policy or custom" of Galveston County played a part in the violation of his Fourteenth Amendment rights. *See Lawson v. Dallas Cty.*, 286 F.3d 257, 263 (5th Cir. 2002). Plaintiff does not identify any policy or custom of Galveston County that allegedly violated his right to adequate medical care in the Jail. Moreover, the Court notes that, as recited above, the record contains evidence that Jail personnel responded to each request for medical care lodged by Plaintiff, that Plaintiff signed a form at intake denying any medical issues requiring attention, and that on one occasion he signed a refusal of medical services. Plaintiff's unsubstantiated assertion that he was denied medical attention at intake (Dkt. 1, at 8; Dkt. 28-1, at 55-56) is insufficient to avoid summary judgment. *See Jones*, 678 F.3d at 348.

To the extent Plaintiff sues Trochesset in his individual capacity, his claim also fails. A supervisory official may be liable under §1983 only if he "affirmatively participates in the acts that cause the constitutional deprivation" or "implements unconstitutional policies that causally result in the injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Plaintiff has alleged no specific conduct by Trochesset and has not identified any policy that allegedly resulted in injury to him. Additionally, Dumas makes no claim that Trochesset failed to supervise or train subordinate officials and has not

alleged facts that would support such a claim. *See Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).

Because Dumas has failed to demonstrate a genuine issue of material fact that Trochesset violated his Fourteenth Amendment rights, summary judgment is granted for Trochesset.

## IV. <u>CONCLUSION</u>

For the reasons stated above the Court **ORDERS** that:

1. Defendant Stroud's motion for summary judgment (Dkt. 28) is **GRANTED**.

2. Defendant Trochesset's motion for summary judgment (Dkt. 29) is **GRANTED**.

3. All of Plaintiff's claims are **DISMISSED with prejudice**.

The Clerk will provide copies of this order to the parties.

SIGNED at Galveston, Texas, this 26th day of March, 2019.

*[signature: George C. Hanks Jr.]*
George C. Hanks Jr.
United States District Judge